1

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8                   FOR THE DISTRICT OF OREGON

9                       PORTLAND DIVISION

10

KELLY KUSAK, an individual,    )
11 on behalf of LEONARD          )
SPINGOLA, deceased,            )
12                             )
                Plaintiff,     )      No. CV-09-6369-HU
13                             )
        v.                     )
14                             )
COMMISSIONER OF SOCIAL         )      OPINION AND ORDER
15 SECURITY ADMINISTRATION,     )
                             )
16              Defendant.      )
_____)
17

18

Kathryn Tassinari
19 Robert Baron
HARDER, WELLS, BARON, & MANNING, PC
20 474 Willamette St.,Suite 200
Eugene, OR 97401
21      Attorneys for Plaintiff

22

Adrian Brown
23 U.S. ATTORNEY'S OFFICE
District of Oregon
24 1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
25

William Le
26 SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
27 701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
28      Attorneys for Defendants

HUBEL, Magistrate Judge:

Plaintiff Kelley Kusak brings this action on behalf of her deceased father, Leonard Spingola, pursuant to section 405(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits  to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for

OPINION AND ORDER 2

either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the

OPINION AND ORDER 3

1  past, the Commissioner proceeds to the fifth and final step to
2  determine if the claimant can perform other work in the national
3  economy in light of his or her age, education, and work experience.
4  The burden shifts to the Commissioner to show what gainful work
5  activities are within the claimant's capabilities. *Parra*, 481 F.3d
6  at 746. The claimant is entitled to disability benefits only if he
7  or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f)
8  and 416.920(f).

9                          **STANDARD OF REVIEW**

10      The court must affirm a denial of benefits if the denial is
11 supported by substantial evidence and is based on correct legal
12 standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
13 2005). Substantial evidence is more than a "mere scintilla" of the
14 evidence but less than a preponderance. Id. "[T]he commissioner's
15 findings are upheld if supported by inferences reasonably drawn
16 from the record, and if evidence exists to support more than one
17 rational interpretation, we must defer to the Commissioner's
18 decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003)
19 (internal citations omitted). Thus, the question before the court
20 is not whether the Commissioner reasonably could have reached a
21 different outcome, but whether the Commissioner's final decision is
22 supported by substantial evidence. See Magallanes v. Bowen, 881
23 F.2d 747, 750 (9th Cir. 1989).

24                          **THE ALJ'S DECISION**

25      The Administrative Law Judge ("ALJ") found that Spingola
26 suffered from the severe impairments of alcoholism and lumbar
27 degenerative disc disease. Further, the ALJ found that Spingola
28 had mild restrictions in activities of daily living and moderate

OPINION AND ORDER 4

difficulties in maintaining concentration. Spingola had the residual functional capacity to perform light duty work, except that during an eight hour day, he could stand or walk no more than four hours. He should not have had exposure to hazards or have climbed ladders, ropes, or scaffolds due to his alcohol consumption. He was restricted to occasional stooping, bending, or crouching. He was able to frequently crawl. He was limited to one to three step tasks. Based on the above limitations, the ALJ concluded that Spignola could have performed work as an assembler of small products, a cashier II, or an electronics assembler.

## FACTS

Spignola was deceased at the time of the ALJ's opinion. He died at the age of 54 on April 12, 2008, of cirrhosis and alcoholism. Tr. 174. During his life, Spignola had been employed as auto mechanic and an automobile repair service estimator. Tr. 112. He was a high school graduate. Tr. 174, 291. At one point he claimed he had been disabled since April 2, 1999, and later he claimed disability since February 1, 2004, but after his death and the substitution of his daughter Ms. Kusak as the claimant in this case, she amended the alleged onset date to May 18, 2006. Tr. 11, 163, 183. Spingola's last date insured was June 30, 2007. Tr. 12. On March 26, 2007, Spignola alleged he was disabled due to "acute cronic [*sic*] back pain with acute and cronic [*sic*] shoulder [pain]." Tr. 183, 191.

Prior to his death, Spignola typically woke up between 6:30 and 7:00 a.m., showered, and made himself breakfast. Tr. 300. He would then watch TV until roughly 1 pm and then take a nap. Tr. 209. He made his own dinner, watched more television, and then

OPINION AND ORDER 5

went to bed between 10 p.m. and midnight.  Tr. 209, 300.  He did laundry weekly, wiped down surfaces in his house, and did other basic cleaning.  Tr. 203, 211.  He went outside daily, and was able to do so alone.  Tr. 204.  Spingola could drive and was able to do light shopping for groceries.  Tr. 204.  He smoked one pack of cigarettes per day for 18 years prior to his death, Tr. 291, 300, and typically ate just one meal per day.  Tr. 253.

Spignola alleged he had "a history of chronic back pain," although he could not trace it to any particular accident or event. Tr. 299.  He had back surgery at some point in the 1980s, and again in the 1990s, to address issues with the L5-S1 and L4-L5 vertebrae. Id.  Despite the surgeries, Spingola continued to report that he has "chronic back pain all day" that "is localized to his lumbar back."  Id.  In Spingola's view, "his only current work related problem [was] back pain."  Tr. 291.

In June 2007, Spingola related to examining psychologist Dr. McConochie that because of his pain, "he can be on his feet and busy for about 15-30 minutes if there is no heavy lifting.  He often needs a five-minute rest to do continuous activities."  Tr. 293.  During the same interview, Spingola said, "Standing and walking for more than five minutes is sometimes very tough."  Tr. 291.  The same month Spingola told an examining internist, Dr. Komanapalli that "[h]e spends a quarter of his day on his feet." Tr. 300.

Dr. Komanapalli assessed that "the number of hours the claimant could be expected to stand and walk in an eight-hour work day is between two and four hours."  Tr. 303.  A non-examining physician, Dr. Neal Berner, opined, based on his review of the

OPINION AND ORDER 6

medical records, that Spingola could stand or walk "about 6 hours in an 8-hour workday." Tr. 307. He explained that he disagreed with Dr. Komanapalli's assessment because a "2-4 hour stand walk is excessive restriction [*sic*] based on [claimant's] own report of being on feet 1/4 of each day." Tr. 312. In spite of his complaints, Spingola did not take any prescription medications for his pain. Tr. 291. Instead of taking medication or seeking other medical treatment, Spingola preferred to treat his pain by drinking alcohol. Tr. 345.

On January 7, 2007, Spignola was hospitalized due to an alcohol withdrawal seizure. Tr. 252. Kusak had found her father with his eyes rolled back in his head, his teeth clenched, unresponsive to stimuli, and his upper extremities displaying chaotic activities. Id. During admission to the hospital, Kusak told doctors at Sacred Heart that Spingola had been drinking 10-12 glasses of rum per day for the previous 8 years. Tr. 252. During that period there "ha[d] not been any attempts at cessation of his alcohol consumption." Id. On June 7, 2007, Spingola "admit[ted] to having an average of one alcoholic drink per day, but denie[d] that he ha[d] abused alcohol in the past." Tr. 291. On June 14, 2007, Spingola contradicted his June 7, 2007 statement when he told Dr. Komanapalli that "he still drinks 3-4 days a week and up to three beers at a time." Tr. 299. Continuing his inconsistent reports, on December 17, 2007, Spingola said he "drinks anywhere between 4-8 drinks a day, beer, hard liquor," in order to treat his back pain. Tr. 345.

According to the emergency room's Dr. Geoffrey Gordon, Spignola related, "He does get quite shaky if he does not drink,

OPINION AND ORDER 7

but he rarely goes a day without drinking." Tr. 255. On June 7, 2007, the day of his neuropsychological exam, he did not drink and the psychologist, Dr. McConochie, observed that Spingola "does have a bilateral hand tremor, suggestive of neurological problems." Tr. 291. Spingola's hand tremors, however, were not noted by Dr. Komanapalli during a full physical examination on June 14, 2007. Dr. Komanapalli commented extensively on Spingola's ability to use his hands:

> Claimant is able to grip and hold objects securely to the palm by the last three digits. Claimant is also able to grasp and manipulate both large and small objects with the first three digits. Claimant's thumb functions with normal opposition. There is no evidence of myotonia or grip release. There is no evidence of localized tenderness, erythema, or effusion. There is no evidence of diminution of function with repetition. There is no evidence of spasticity or ataxia. Sensation to touch and pin in all five fingers is normal. Joint position, vibration sense, graphesthesia and stereognosis are normal. Subjective and objective findings are consistent. Functional limitations are based on both subjective and objective findings. Hand and finger anatomy is normal; there are no effusions, deformities, areas of erythema, swelling, or gouty tophi.

Tr. 302-03. Dr. Komanapalli concluded, "There are no manipulative limitations." A non-examining consulting physician, Dr. Neal Berner, noted the discrepancy in shorthand, "Clmt has bilat hand tremor during neuro psych but not during physical CE, OV's or hspt reports." Tr. 311.

Disability Determination Services referred Spingola to psychologist William McConochie, Ph.D. for a neuropsychological exam which took place on June 7, 2007. Tr. 290. The appointment was to be cancelled if Spingola arrived inebriated, but the examiner opined that was Spingola was sober on arrival. Tr. 290. During the interview, Spingola said "his only current work related

OPINION AND ORDER 8

problem is back pain, which bothers him especially if he is physically active." Tr. 291. McConochie opined that Spingola's "thought content was logical," Tr. 291, and that during the interview and testing process Spingola "had good attention and concentration." Tr. 292. Dr. McConochie indicated that Spingola had no impairment in the areas of sustained concentration and attention, persistence, or in his ability to engage in appropriate social interaction. Tr. 295. Dr. McConochie opined that Spingola had a mild to moderate impairment in his ability to understand and remember instructions. Tr. 295. Nevertheless, Dr. McConochie diagnosed Spingola with "Dementia due to chronic alcohol abuse, by medical record." Tr. 295. He concluded that Spingola's "primary psychological limitation to work activity is borderline level intellectual functioning as an aspect of apparent dementia. Prognosis for improvement in this condition is poor, he does not acknowledge alcohol abuse, which appears to be the underlying origin of this deficiency . . . He is still drinking." Tr. 295-96.

## DISCUSSION

Kusak argues that the ALJ erred by (1) failing to include dementia and bilateral hand tremors as "severe" impairments at step two; (2) failing to give full credit to the opinion of Dr. McConochie, the examining psychologist; (3) failing to give full credit to Dr. Komanapalli, the examining physician; (4) failing to find disability by application of the Medical-Vocational rules (5) failing to credit Kusak's lay testimony about her father; and (6) failing to meet her burden of proving that Spingola retained the ability to perform other work in the national economy.

I address each assignment of error in turn.

OPINION AND ORDER 9

1   I.   Severe Impairments

2        An impairment is severe "when alone or in combination with

3   another medically determinable physical or mental impairment(s), it

4   significantly limits an individual's physical or mental ability to

5   do basic work activities."  SSR 02-01p.  "[A]n ALJ may find that a

6   claimant lacks a medically severe impairment or combination of

7   impairments only when his conclusion is clearly established by

8   medical evidence."  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir.

9   2005) (quotations omitted).  "An impairment can be considered as

10  not severe [at step two] only if it is a slight abnormality which

11  has such a minimal effect on the individual that it would not be

12  expected to interfere with the individual's ability to work,

13  irrespective of age, education, or work experience."  SSR 85-28;

14  Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).

15       Kusak argues that the ALJ erred by failing to find that

16  dementia and hand tremors were severe impairments.  For the reasons

17  set forth below, I disagree.

18       A.   Hand Tremors

19       "The ALJ is responsible for determining credibility, resolving

20  conflicts in medical testimony, and resolving ambiguities."  Edlund

21  v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).   The sole

22  reference to hand tremors in the record of this case comes from the

23  observations of a psychologist, Dr. McConochie.  Medical doctors

24  clarified that Spingola's shakiness was transient, explaining, "He

25  does get quite shaky if he does not drink, but he rarely goes a day

26  without drinking."  Tr. 255.  One of the rare days Spingola did not

27  drink was, in McConochie's estimation, the morning he appeared for

28  his neuropsychological evaluation.  McConochie commented, "He did

OPINION AND ORDER 10

1    not appear inebriated. He had no alcohol on his breath." Tr. 290.

2    The ALJ acknowledged all the relevant evidence in the record on the

3    topic of hand tremors, and relied on the assessment done by Dr.

4    Komanapalli during Spingola's full physical exam.  Dr. Komanapalli

5    did an extensive analysis of Spingola's ability to use his hands,

6    concluding that he had "no manipulative limitations."  Tr. 303.

7    Although a nurse practitioner who saw Spingola March 19, 2008, less

8    than a month before his death, noticed that he was "tremulous when

9    raising his arms, or changing his position on the exam table," Tr.

10   344, her statement does not refer to Spingola's hands.  Rather, it

11   appears that she was referring to his whole body.  In any event,

12   Spingola's condition on March 19, 2008, is not dispositive because

13   he must have been disabled by June 30, 2007, his date last insured.

14       In addition, nothing in the record indicates that Spingola

15   himself ever complained of any difficulty using his hands.  On the

16   contrary, his view was that "his only current work related problem

17   [was] back pain."  Tr. 291.  Moreover, Spingola was able to drive,

18   do laundry, shop, and clean-all activities requiring use of his

19   hands.  The ALJ took into account the above evidence, and concluded

20   that there was "no objective basis for imposing any restriction on

21   the use of Mr. Spingola's hands."  Tr. 21.  I agree.  I find the

22   medical evidence clearly establishes that hand tremors were not a

23   severe impairment, and more particularly, not a restriction on his

24   ability to work.

25       B.    Dementia

26       Kusak argues that the ALJ erred by not including dementia as

27   a  severe  impairment  at  step  two,  as  well.   During  his

28   neuropsychological assessment, Dr. McConochie diagnosed Spingola

OPINION AND ORDER 11

1  with "[d]ementia due to chronic alcohol abuse, by medical record."
2  Tr. 295.   Despite his diagnosis, Dr. McConochie opined that
3  Spingola's "thought content was logical,"  Tr. 291, and that he
4  "had good attention and concentration."  Tr. 292.  Dr. McConochie
5  indicated that, with regard to Spingola's ability to engage in work
6  related activity, he had no impairment in the areas of sustained
7  concentration and attention, persistence, or in his ability to
8  engage in appropriate social interaction.   Dr. McConochie opined
9  that Spingola only had a mild to moderate impairment in his ability
10 to understand and remember instructions.   Tr. 295.

11       The ALJ considered Dr. McConochie's opinion together with the
12 evidence of record, which showed that Spingola drove himself to the
13 store several times per week, cleaned the surfaces in his house on
14 a weekly basis, shopped for groceries, cooked simple meals, played
15 with his daughter's dog, did light chores, and occasionally went
16 fishing.   Tr. 15-16.   The ALJ noted that Spingola had no social
17 difficulties, and that he regularly interacted with his daughter,
18 his son-in-law, and a neighbor.   The ALJ noted that Spingola and
19 his   daughter   reported   that   he   had   difficulty   remembering
20 instructions, but noted that the record indicated Spingola "lived
21 basically independently."   Tr. 19.   The ALJ also considered the
22 opinion  of  a  non-examining  psychiatric  consultant,  Dr.  Frank
23 Lahman.    Dr. Lahman agreed that Spingola had dementia due to
24 chronic alcohol abuse, but found only a moderate limitation in his
25 ability  to  understand,  remember,  and  carry  out  detailed
26 instructions.  Tr. 328.   It was Dr. Lahman's opinion that Spingola
27 "can remember simple routine instructions," and "can consistently
28 perform simple repetitive routine tasks."   Tr. 330.   The ALJ gave

OPINION AND ORDER 12

great weight to Dr. Lahman's opinion because it "seem[ed] consistent with Mr. Spingola's self-reported level of functioning as revealed in the medical records." Tr. 20. Due to the tension between Spingola's self-reported level of functioning and Dr. McConochie's testimony, the ALJ gave only partial credit to Dr. McConochie's opinion.

For all of the above reasons, the ALJ found that Spingola was capable of one to three step tasks, and dementia was not a severe impairment. I agree with the ALJ's finding because the evidence in the record, discussed above, establishes that Spingola's dementia did not significantly limit his mental ability to do basic work activities. Put otherwise, Spingola's dementia had such a minimal effect on him that it would not be expected to interfere with his ability to work.

Although the ALJ did not find dementia to be a severe impairment, she included a limitation of one to three step tasks in Spingola's residual functional capacity. Even if the ALJ had erred in her assessment, "any alleged error at step two was harmless because step two was decided in [the claimant]'s favor with regard to other ailments" and the ALJ considered the symptoms at issue, dementia in this case, in formulating the RFC. Mondragon v. Astrue, 364 Fed. Appx. 346, 1 (9th Cir. 2010).

II. Examining Physician Testimony

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an

OPINION AND ORDER 13

1  individual. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). If

2  a treating or examining physician's opinion is not contradicted by

3  another physician, the ALJ may only reject it for clear and

4  convincing reasons. <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>,

5  454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if

6  it is contradicted by another physician, the ALJ may not reject the

7  opinion without providing specific and legitimate reasons supported

8  by substantial evidence in the record. <u>Orn</u>, 495 F.3d at 632;

9  <u>Widmark</u>, 454 F.3d at 1066. The opinion of a nonexamining

10 physician, by itself, is insufficient to constitute substantial

11 evidence to reject the opinion of a treating or examining

12 physician. <u>Widmark</u>, 454 F.3d at 1066 n.2. Opinions of a

13 nonexamining, testifying medical advisor may serve as substantial

14 evidence when they are supported by and are consistent with other

15 evidence in the record. <u>Morgan v. Commissioner of Social Security</u>

16 <u>Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).

17      A.   <u>Hand Tremors</u>

18      As noted in the previous section, the examining psychologist,

19 Dr. McConochie, was the sole person who opined that Spingola had an

20 issue with hand tremors. Dr. Komanapalli, an examining physician

21 who performed an extensive analysis of Spingola's hands, however,

22 concluded that Spingola had no manipulative limitations. Dr.

23 Komanapalli's opinion was consistent with Spingola's own

24 description of his limitations, and his daily activities as

25 described above.

26      I find that the ALJ gave specific and legitimate reasons to

27 reject the opinion of Dr. McConochie with respect to hand tremors.

28 The ALJ did not err in this regard.

OPINION AND ORDER 14

B.    <u>Dementia</u>

Although both the examining psychologist, Dr. McConochie, and the nonexamining psychiatric consultant, Dr. Lahman, concluded that Spingola had dementia as a result of alcohol abuse, the two differed somewhat their opinions about what Spingola could do. Dr. McConochie opined that Spingola had a mild to moderate impairment in his ability to understand and remember instructions. Dr. Lahman opined that Spingola could remember simple routine instructions and consistently perform simple repetitive routine tasks. The ALJ found that Dr. Lahman's opinion was more consistent with the evidence of daily activities present in the record, and thus gave great weight to his opinion and only partial weight to Dr. McConochie's opinion.

I find that Dr. Lahman's opinion, taken together with consistent evidence in the record, gave the ALJ substantial evidence to assign only partial weight to Dr. McConochie's opinion regarding dementia. The ALJ, therefore, did not err in this regard.

C.    <u>Sit/Stand Limitation</u>

Dr. Komanapalli opined that "[t]he number of hours the claimant could be expected to stand and walk in an eight-hour work day is between two and four hours." Tr. 303. Dr. Berner disagreed with Dr. Komanapalli's opinion based on Dr. Komanapalli's own medical records. Dr. Berner opined that Spingola could stand or walk "about 6 hours in an 8-hour workday." Tr. 307. Dr. Berner explained that he only partially accepted Dr. Komanapalli's opinion because a "2-4 hour stand walk is excessive restriction based on [claimant's] own report of being on his feet 1/4 of each day." Tr.

OPINION AND ORDER 15

312.  It is ambiguous whether Spingola (and thus Dr. Berner) meant one quarter of a 24-hour day or one quarter of his waking hours. Assuming Spingola referred to his waking hours, simple math[1] dictates that the ALJ's 4 hour stand/walk limitation is very close to Spingola's own reports about his ability to stand and walk.

More importantly, as the defendant points out, the limitations imposed by Spingola's alleged back pain are not significantly backed up by the record.  In the record before the court, Spingola seldom sought treatment for his back pain.  Many of the records are completely absent of any mention of back pain.  See e.g. Tr. 249 (discharge diagnoses after a two-week stay in the hospital include no mention of back problems).  By his own admission, the only thing he did for his back pain was "drink alcohol."  Tr. 345.  Failure to seek medical treatment for back pain is "powerful evidence" that the claimant does not have significant pain.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Nevertheless, the ALJ put in the residual functional capacity a limitation that Spingola "should not have stood/walked for more than four out of eight hours."  Tr. 16-17.  This limitation is reasonable in light of the relative absence of medical records indicating Spingola's alleged back problems or limitations on

[1] Spingola reported to Dr. Komanapalli that "[h]e sleeps from 10-12 at night to 6:30 or 7 in the morning."  Tr. 300.  If Spingola woke at 6:30 a.m. and went to bed between 10 p.m. and midnight, then his day was 15.5 to 17.5 hours long, and one quarter of his day would be 3.875-4.375 hours.  If he woke up at 7 a.m. and went to bed at 10 p.m., then his day was 15 hours long, and one quarter of his day would be 3.75 hours.  Thus, depending on how early and late Spingola rose and slept on a given day, according to his testimony, he spent between 3.75 and 4.375 hours on his feet.

OPINION AND ORDER 16

standing and walking such problems might have caused.  The ALJ
explained that Dr. Berner did not agree with Dr. Komanapalli's
assessment because it conflicted with Spingola's statement about
being on his feet for a quarter of the day.  The ALJ concluded that
she "assign[s] great weight to Dr. Berner's opinion, as it is well-
explained and thorough" and "assign[s] only partial weight to Dr.
Komanapalli's opinion."  Tr. 20.  The ALJ further explained that
"the treating source records do not mention back pain or associated
limitations in the record."  Tr. 20.

I find that the opinion of Dr. Berner, taken together with the
evidence in the record regarding how much time Spingola spent on
his feet and the absence of medical records about back pain and
associated limitations, constitutes substantial evidence sufficient
to accord only partial weight to the opinion of Dr. Komanapalli.
The ALJ did not err in assessing a four hour stand/walk limitation
in Spingola's RFC.

According to Kusak, the ALJ's alleged error concerning the
amount of time Spingola could stand or walk means that he should
have been limited to sedentary work and thus deemed disabled under
the medical-vocational rules.  A claimant is limited to sedentary
work when he or she can stand or walk no more than two hours in an
eight hour work day. See SSR 83-10.  This argument is without
merit.  Nowhere in the record, including in the opinion of Dr.
Komanapalli, does anyone indicate that Spingola was only able to
stand and walk for two hours per day.  Komanapalli's opinion was
that Spingola should be limited to standing and walking for two to
four hours per day, not just two hours.  Moreover, as discussed
above, the ALJ did not err in giving Dr. Komanapalli's opinion only

OPINION AND ORDER 17

partial weight, by limiting Spingola to four hours or less on his feet. Thus, the argument that Spingola should have been limited to sedentary work fails.

III. Lay Witness Testimony

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives reasons for the rejection that are germane to each witness. Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

Kusak alleges the ALJ erred by rejecting her testimony with regard to the extent of Spingola's back pain, his ability to stand and walk, and his mental functioning. For example, Kusak testified that Spingola "was in incredible amounts of pain always," Tr. 98, that "the smallest amount of activity would hurt his back," Tr. 101, that he struggled to walk up his own front porch, and that "he had a hard time walking to the mailbox and back." Tr. 102. Kusak further testified that after Spingola's hospitalization in January

OPINION AND ORDER 18

2007 for alcohol withdrawal, that "he just wasn't the same. He couldn't think straight. A lot of times he wouldn't make sense." Tr. 101. Relating to Spingola's alcohol abuse, Kusak told doctors on January 7, 2007 that Spingola "drinks approximately 10 to 12 glasses of rum from the time he wakes up until he goes to bed. This has gone on for the last 8 years." Tr. 252. Yet she told the ALJ at the August 19, 2009 hearing that Spingola "would have probably four or five drinks a day." Tr. 99.

The ALJ found that Kusak's testimony about her father's limitations was "descriptive of her perceptions; however, it does not provide sufficient support to alter the residual functional capacity. The behavior observed by Ms. Kusak is not fully consistent with the medical and other evidence of record." Tr. 19. The ALJ pointed out that Dr. Miriam Gage noted in December 2007 that after going home from the January 2007 hospital stay, Spingola "has been relatively intact mentally." Tr. 345. In addition, despite Kusak's report that Spingola had a hard time walking to his mailbox and back, Spingola reported on April 17, 2007, a little over 2 months before his last date insured, he could shop for his own groceries, Tr. 212, and on June 14, 2007, 16 days before his last date insured, that he could climb a flight of stairs. Tr. 300.

The ALJ fully discussed Kusak's testimony, and found discrepancies with the medical and other evidence of record. These discrepancies and inconsistencies with the evidence mentioned in this and prior sections constitute germane reasons to discount Kusak's testimony and to conclude that Kusak is not entirely credible. Accordingly, the ALJ did not err in giving only partial

OPINION AND ORDER 19

consideration to Kusak's testimony.

IV.  <u>Ability to Perform Other Work</u>

Kusak's final assignment of error alleges if the ALJ had (1) properly credited the testimony of Dr. McConochie, (2) properly credited Kusak's testimony, or (3) properly informed the vocational expert of all of Spingola's impairments, then the VE would have been unable to find that Spingola was capable of doing work other than his previous jobs in the national economy.  I have rejected, above, Kusak's contentions regarding her own testimony and Dr. McConochie's testimony, and will not repeat my reasoning here. Kusak's assignment of error concerning the limitations imparted to the vocational expert warrants a brief discussion.

According to Kusak, the ALJ failed to include in the hypothetical presented to the vocational expert that Spingola had moderate limitations in concentration, persistence or pace, had a limited attention span, and tended to forget spoken instructions. The ALJ however, noted in her report all of those alleged limitations as they appeared in the record.  In addition, even Dr. McConochie only characterized Spingola's impairment as somewhere between "mild" and "moderate."  See Tr. 295.  Based on the ALJ's consideration of the alleged limitations, she formulated a residual functional capacity that included a limitation "to one to three step tasks equivalent to specific vocational preparation (SVP) 2 entry level work as defined in the Dictionary of Occupational Titles." Tr. 17.  Similarly, in her hypothetical to the vocational expert, the ALJ asked the expert to assume an individual who "is limited to steps no more complex than one, two, three steps or the equivalent of SVP 2, entry level employment in the Dictionary of

OPINION AND ORDER 20

Occupational Titles." Tr. 113.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001). A hypothetical that includes a residual functional capacity which incorporates the limitations and restrictions of the claimant, however, is sufficient. See id. Here, the ALJ incorporated all of Spingola's mental limitations and restrictions into the residual functional capacity's three step limitation, and this limitation was posed in the hypothetical to the vocational expert. Therefore, the ALJ did not err in this regard.

### CONCLUSION

Accordingly, based on the record, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 17 day of March, 2011.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

OPINION AND ORDER 21